■ TANBRO FABRICS CORPORATION, Respondent, v DEERING MILLIKEN, INC., Appellant, et al., Defendant.—Judgment, Supreme Court, New York County, entered on June 14, 1974, after trial and the direction of a verdict in favor of plaintiff on liability and an award of compensatory and punitive damages by the jury, modified, on the law and on the facts, to the extent of striking the award of punitive damages, and as so modified, the judgment is affirmed, without costs and without disbursements. The trial court erred in submitting the question of punitive damages to the jury. During the course of events giving rise to this action, a serious and legitimate question existed as to whether or not defendant, Deering Milliken, Inc., had a security interest in the goods sold by it to Mill Fabrics and purchased from the latter by plaintiff. Under the circumstances Milliken's refusal to release a portion of said goods to plaintiff did not constitute the type of wrongful conduct "aggravated by evil motives" which would support the imposition of punitive damages. (See 14 NY Jur, Damages, § 176.) Concur—Markewich, J.P., Capozzoli and Nunez, JJ.; Kupferman, J., dissents in part in a memorandum, and Yesawich, J., dissents in a memorandum, as follows: Kupferman, J. (dissenting in part). I would affirm, and in that I concur with the majority. In our previous determination against the contention that arbitration could be enforced by Milliken against Tanbro, we found no security interest in Milliken vis-a-vis Tanbro. *(Tanbro Fabrics Corp. v Deering Milliken,* 35 AD2d 469, 471, affd. without opn 29 NY2d 690.) As to punitive damages, inasmuch as Milliken knew of Tanbro's need for the specific goods, and, in fact, that a portion thereof had been resold by Tanbro to a customer, the jury could very well have found in awarding punitive damages, that the goods, which Milliken no longer sold, were withheld in order for Milliken to sell competitive goods. This could make them culpable in punitive damages. *(Walker v Sheldon,* 10 NY2d 401, 404-405; see Ann.: Punitive or exemplary damages for conversion of personalty by one other than chattel mortgagee or conditional seller, 54 ALR2d 1361.) Yesawich, J. (dissenting). Respondent Tanbro Fabrics Corporation had been purchasing unfinished textiles from appellant Deering Milliken, Inc. (Milliken) for over 30 years and was the latter's largest customer of tri-blend broadcloth. Upon being informed of Milliken's decision to discontinue selling this fabric, Tanbro learned from Milliken's sales personnel that Milliken had sold a large quantity of this same fabric to Mill Fabrics Corporation (Mill). Using textile brokers Tanbro purchased approximately 260,000 yards of tri-blend broadcloth from Mill in May, 1969. Although Tanbro paid for these goods, they remained, with Tanbro's knowledge, in Milliken's possession at Gaffney, South Carolina. Shortly after buying these goods Tanbro advised Milliken's sales personnel of the purchase. The agreement pursuant to which Mill had purchased these goods from Milliken a year earlier provided that: "Any property of Buyer, including but not limited to, merchandise billed and held (whether paid for or not) at any time in Seller's (including any parent, subsidiary or affiliate company of Seller) possession, either as principal or agent, shall be deemed held as security for, and may at Seller's option be set-off against any and all of Buyer's obligations to Seller or any parent, subsidiary, affiliate, principal or agent of Seller." By virtue of its extensive dealings with Milliken, Tanbro was familiar with this standard security interest provision contained in Milliken's purchase agreements. Normally when Tanbro desired to have Milliken release respondent's goods from bill and hold status, it would contact Milliken directly. There is evidence that Tanbro did not follow its customary practice in this instance but instead arranged to have Mill order Milliken to release the goods to finishing plants without disclosure of

Tanbro's interest. While Mill had paid Milliken for these particular goods in full, when the goods were ordered released Mill was indebted to Milliken for other merchandise it had purchased. In fact between December, 1968 and December, 1969 Mill was obligated to Milliken in amounts never less than $115,000. In January, 1970 after Mill's financial condition further deteriorated, Tanbro notified Milliken of its claim to the remainder of the tri-blend broadcloth still being held by Milliken. Milliken's credit department, which assertedly was unaware of Tanbro's interest in these goods and in reliance on its own security interest, refused to release the goods unless Tanbro deposited $50,000 with Milliken without prejudice. Tanbro rejected this proposal and initiated an action for conversion. The trial court directed a verdict in favor of Tanbro on the issue of liability. In doing so it concluded that once the tri-blend broadcloth had been sold by Mill to Tanbro the goods were no longer the "property of the buyer" and therefore were not subject to Milliken's security interest. This determination overlooks that portion of the purchase agreement which expressly extended Milliken's security interest to goods, whether paid for or not, which were on bill and hold status. When Tanbro purchased the goods from Mill, as well as when Milliken attempted to enforce its security interest, the goods were burdened with Milliken's security interest for Mill was then otherwise indebted to Milliken and the goods were being held on bill and hold status. Without passing upon whether section 9-307 of the Uniform Commercial Code is applicable when a party has perfected its security interest by possession, in my view for Tanbro to succeed it was necessary for it to prove its status as a buyer in the ordinary course of business. (Uniform Commercial Code, § 1-201, subd [9].) The evidence precludes determining, as a matter of law, that Tanbro enjoyed that status for Mill's main business was derived from the sale of finished goods and there is conflicting testimony as to whether its sale of unfinished goods to Tanbro was in the ordinary course of Mill's business. More importantly, there is also a triable issue presented as to whether Tanbro acted in good faith, for at the time of purchase Tanbro was fully aware that the goods were being retained in bill and hold status by Milliken and was thoroughly familiar with Milliken's practice of retaining a security interest in goods it sold but kept in its possession. Also to be considered on this issue is the unusual technique seemingly employed by Tanbro to effect a release of the goods without revealing either its identity or interest in the goods. The judgment appealed from should, therefore, be reversed and the matter remanded for a new trial.